Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL II**

| | | |
|---|---|---|
| KENIE J. ACEVEDO COLÓN <br><br> APELANTE <br><br> vs. <br><br> JORGE RIVERA COLÓN <br><br> APELADO | TA2026AP00484 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Ponce <br><br> Caso Núm.: JD2024CV00495 <br><br> Sobre: Desahucio en Precario |

Panel integrado por su presidenta, el Juez Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante este foro revisor, el Sr. Kennie Josuel Acevedo Colón (señor Acevedo Colón o parte apelante) y nos solicita que revoquemos la *Sentencia* emitida el 18 de marzo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante el referido dictamen, el foro primario declaró *no ha lugar* a la demanda incoada por el señor Acevedo Colón y, a su vez, declaró *ha lugar* a la reconvención instada por el Sr. Jorge Rivera Colón (señor Rivera Colón o parte apelada).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 22 de agosto de 2024, el señor Acevedo Colón incoó una *Demanda* sobre desahucio en contra del señor Rivera Colón. Alegó ser el dueño de la propiedad ubicada en la calle Versalles 333 de la urbanización Villas del Prado, en el municipio de Juana Díaz, en la cual residía el señor Rivera Colón. Añadió que, para enero de 2018,

permitió que el señor Rivera Colón y su familia ocuparan la referida propiedad debido a que este no tenía dónde vivir, a cambio de que asumiera el pago de la hipoteca mientras ocupara la residencia. Precisó que, el pago mensual de la hipoteca ascendía a $498.96 y que, según el estado de cuenta del banco, el señor Rivera Colón había incurrido en múltiples atrasos y mantenía una deuda equivalente a cinco (5) meses de la hipoteca. Sostuvo que le requirió al señor Rivera Colón que desalojara la propiedad, pero este se negó a hacerlo. En consecuencia, solicitó que se ordenara el desalojo del señor Rivera Colón y que este satisficiera los cánones de arrendamiento adeudados hasta la fecha en que finalmente desocupara la residencia.

Luego, el 4 de octubre de 2024, el señor Rivera Colón instó su *Contestación a Demanda Enmendada y Reconvención*. En esta, negó la mayoría de las alegaciones y admitió otras. Sostuvo que el 18 de febrero de 2018, ambas partes suscribieron un contrato de compraventa respecto a la propiedad inmueble en controversia, debido a que el señor Acevedo Colón enfrentaba un atraso significativo en el préstamo hipotecario y en las cuotas de mantenimiento, encontrándose el inmueble en riesgo de ejecución. Alegó afirmativamente que, conforme al acuerdo suscrito, retendría la posesión de la propiedad y asumiría el pago de la hipoteca y de las cuotas de manteamiento hasta saldar la deuda o hasta obtener un préstamo hipotecario que le permitiera adquirir la propiedad mediante el otorgamiento de la correspondiente escritura pública. El señor Rivera Colón aseveró haber pagado aproximadamente la suma de $67,500.00 en mensualidades hipotecarias y cerca de $4,000.00 en cuotas de mantenimiento, además de haber realizado mejoras en la propiedad, tales como la construcción de una verja y un almacén en bloques y cemento. Asimismo, reconvino reiterando la existencia y validez del contrato de compraventa, su cumplimiento

sustancial y el incumplimiento contractual por parte del señor Acevedo Colón.

Por su parte, el 12 de octubre de 2024, el señor Acevedo Colón presentó una *Réplica* mediante la cual aceptó que ambas partes habían firmado un documento con el propósito de que el señor Rivera Colón utilizara el inmueble en controversia, pero negó que su intención fuera vender la propiedad. Añadió, además, que de ser cierto que se realizaron mejoras a la propiedad, estas fueron efectuadas sin su consentimiento. Así, alegó afirmativamente que no un existía contrato de compraventa, como sostenía el señor Rivera Colón, sino un acuerdo de arrendamiento de mes a mes.

Examinada la prueba desfilada ante sí, el 19 de marzo de 2026, notificada al día siguiente, el foro *a quo* emitió la *Sentencia* que hoy revisamos. Mediante su dictamen, el foro primario declaró *no ha lugar* la demanda instada por el señor Acevedo Colón y, en cambio, declaró *ha lugar* la reconvención presentada por el señor Rivera Colón. El tribunal concluyó que entre las partes existió un acuerdo de compraventa respecto a la propiedad inmueble objeto de controversia, al haberse establecido tanto la cosa objeto del contrato como el precio cierto de la compraventa, consistente en el pago de las mensualidades hipotecarias atrasadas y del saldo pendiente del préstamo hipotecario. En consecuencia, sostuvo que, acreditada la existencia de un contrato válido de compraventa, procedía ordenar su cumplimiento específico y requerir al señor Acevedo Colón el otorgamiento de la correspondiente escritura pública de compraventa. Añadió que permitir que una de las partes invocara el procedimiento de desahucio para evadir el cumplimiento de un contrato previamente perfeccionado, constituía un resultado contrario a los principios de la buena fe contractual que rigen nuestro ordenamiento jurídico. Por tal razón, desestimó la

reclamación de desahucio e impuso honorarios de abogado por temeridad al señor Acevedo Colón.

A su vez, en su dictamen, el Tribunal consignó las siguientes determinaciones de hechos:

1. La parte demandante es titular registral de la propiedad inmueble ubicada en la calle Versalles 333, Urb. Villas del Prado, Juana Díaz, Puerto Rico 00795, con la siguiente descripción registral:

   **RUSTICA**: Parcela de terreno identificada como "Parcela Tres (3)" localizada en el Barrio Amuelas del término municipal de Juana Díaz, con una cabida superficial de TRESCIENTOS CINCO MIL OCHOCIENTOS OCHENTA Y CUATRO PUNTO OCHOCIENTOS CINCO METROS CUADRADOS (305,884.805 m.c.), equivalentes a SETENTA Y SIETE PUNTO SIETE MIL DOSCIENTOS SESENTA CUERDAS (77.7260 cuerdas). Colinda por el NORTE, en una distancia de setecientos cuatro punto setecientos treinta y siete metros (704.737 m.), con Parcela Dos (2) segregada de finca principal de la cual se segrega esta parcela y Parcela Estación de Bombas; por el SUR, en varias distancias que suman ochocientos cincuenta y dos punto novecientos treinta y ocho metros (852.938 m.), con Sucesión J. Serrallés; por el ESTE, en varias distancias que suman trescientos setenta y cuatro punto setecientosveinticuatro metros (374.724 m.), con Canal de Riego Juana Díaz; y por el OESTE, en varias distancias que suman cuatrocientos setenta y ocho punto novecientos veinticuatro metros (478.924 m.), con Parcela Uno (1) segregada de la finca principal de la cual se segrega esta parcela.

   Número de Catastro: 391-000-002-22-000.

2. El demandante y el demandado son hermanos.

3. El demandante es una persona sorda y sus idiomas principales son el American Sign Language (ASL) y el inglés.

4. El demandado se comunica mediante de señas caseras y, además, por escrito en inglés, ya sea a través de una libreta o mediante su teléfono celular.

5. El 18 de febrero de 2018, el demandante suscribió un contrato de compraventa con la parte demandada para la propiedad inmueble antes descrita, habiéndose establecido tanto la cosa objeto del contrato como el precio de la compraventa, consistente en el pago de las mensualidades hipotecarias atrasadas y el saldo pendiente del préstamo hipotecario.

6. El referido contrato fue redactado por la madre de las partes, la señora Juana I Colón Rodr[í]guez, a solicitud del demandante.

7. Luego de redactado el contrato, la señora Juana I. Colón Rodríguez le explicó su contenido al demandante y se aseguró de que este comprendiera sus términos y consecuencias.

8. La razón por la cual las partes suscribieron el referido acuerdo fue que, para ese entonces, el demandante adeudaba nueve (9) meses de pagos hipotecarios y tres (3) años de cuotas de mantenimiento de la Urbanización Villas del Prado, encontrándose la propiedad en riesgo inminente de ejecución por incumplimiento de pago.

9. El demandante intentó llegar a un acuerdo mediante un proceso de "loss mitigation"; sin embargo, ello no fue posible debido a la cantidad de pagos en atraso.

10. Ante dicha situación y la inminente pérdida de la propiedad, el demandante decidió venderle a su hermano la propiedad inmueble en controversia, con el propósito de que permaneciera dentro del núcleo familiar.

11. Desde la fecha de suscripción del contrato, el demandado ha residido en la propiedad junto a su esposa y sus hijos menores de edad.

12. Asimismo, desde entonces, el demandado ha realizado los pagos correspondientes a la hipoteca y a las cuotas de mantenimiento.

13. A raíz del acuerdo entre las partes, el demandado efectuó mejoras permanentes en la propiedad, consistentes en la construcción de una verja en concreto alrededor de la residencia y la edificación de un cuarto de almacenamiento, invirtiendo aproximadamente $43,520.00.

14. Para el año 2024, el demandante se encontraba en la búsqueda de otra propiedad inmueble para su adquisición; no obstante, debido a su historial crediticio, no le fue aprobada.

15. En ese mismo periodo, el demandante se encontraba orientándose legalmente respecto al trámite necesario para realizar el traspaso formal de la titularidad de la propiedad a nombre del demandado.

16. Posteriormente, la pareja del demandante le indicó que, de no remover al demandado de la propiedad objeto de controversia, daría por terminada la relación.

17. De igual forma, el padre de la pareja del demandante le solicitó que removiera al demandado de la propiedad, según surge de los mensajes de texto intercambiados entre las partes.

18. A raíz de lo anterior, el demandante optó por presentar la presente demanda de desahucio.

En desacuerdo, el 2 de abril de 2026, el señor Acevedo Colón presentó una *Moción Solicitando Determinación de Hechos Adicionales y Reconsideración.* Razonó que, el foro primario omitió incluir en sus determinaciones de hechos que el inmueble objeto del

pleito poseía un gravamen hipotecario perteneciente al Banco Popular de Puerto Rico. En ese sentido, expuso que era necesario que la referida institución bancaria autorizara la venta y determinara si aplicaba la cláusula de aceleración de pago, si permitía que el señor Rivera Colón asumiera el pago o si le concedía un término para buscar financiamiento y saldar la hipoteca. Asimismo, cuestionó la interpretación del tribunal sobre el acuerdo suscrito entre las partes.

Así las cosas, el foro primario dictó una *Resolución Interlocutoria* el 8 de abril de 2026 en la cual declaró *No Ha Lugar* la solicitud de determinación de hechos adicionales y reconsideración instada por el señor Acevedo Colón.

Inconforme aun, el 8 de mayo de 2026, el señor Acevedo Colón acudió ante este foro revisor mediante un recurso de *Apelación* y alega que el foro *a quo* cometió los siguientes errores:

> Cometió error el Tribunal al determinar que la carta a manuscrito suscrita el 18 de febrero de 2018 constituye un contrato de compraventa cuando el demandante entendió que rentaba la casa y el demandado entendió que era un regalo. El documento en cuestión no cumple con los requisitos mínimos de un contrato de compraventa, ni cumple con los requisitos establecidos en nuestro orden jurídico para una donación. El Tribunal abusó de su discreción en la apreciación de la prueba.

> Erró el Tribunal en dictar Sentencia dejando fuera una parte indispensable al ordenar que el demandante otorgue escritura pública de compraventa del inmueble objeto de este pleito sin contar con el Banco Popular quien es el acreedor hipotecario y tiene derechos e intereses legítimos sobre la propiedad.

> Abusó de la discreción el Tribunal al imponer honorarios por temeridad por defender los intereses de su cliente y plantear al Tribunal una posición en derecho.

El 16 de junio de 2026, el señor Rivera Colón compareció ante este foro intermedio mediante *Alegato de la Parte Apelada.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.

### A.

La acción de desahucio es el mecanismo que tiene el dueño o la dueña de un inmueble para "recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna". *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020), citando a *Fernández & Hno. v. Pérez*, 79 DPR 244, 247 (1956). El desahucio puede solicitarse en un procedimiento ordinario o uno sumario. *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018).

El desahucio sumario se rige por los Artículos 620 al 634 del Código de Enjuiciamiento Civil, según enmendado, 32 LPRA secs. 2821-2838. Esta reglamentación responde al interés del Estado de atender con agilidad el reclamo de una persona dueña de un inmueble que ha sido impedida de ejercer su derecho a poseer y disfrutarlo. *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016). En la acción de desahucio solo puede discutirse el derecho a la posesión de un inmueble. *Mora Dev. Corp. v. Sandín,* 118 DPR 733, 748 (1987). Ahora bien, de existir un conflicto de título, no procede la tramitación sumaria de un desahucio, por lo que deberá dilucidarse en un juicio ordinario. *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971).

### B.

Conforme al Art. 1042 del Código Civil de Puerto Rico de 1930,[1] 31 LPRA sec. 2992, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitas o en que intervenga cualquier género de culpa o negligencia". Nuestro derecho de obligaciones preceptúa el principio de la libertad en la contratación. Conforme a este, las partes contratantes podrán

---

[1] Hacemos referencia al derogado Código Civil de 1930, por ser la ley vigente a la fecha en que las partes suscribieron el contrato en controversia.

establecer los pactos, cláusulas y condiciones que estimen convenientes, siempre que estos no sean contrarias a las leyes, la moral y al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372.

Es norma establecida que, para que un contrato sea válido es necesario que concurran los siguientes requisitos: consentimiento, objeto y causa. *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 999 (2009). Asimismo, en nuestro ordenamiento jurídico rige la teoría contractual de la libertad de contratación o la autonomía de la voluntad. Una vez perfeccionado el contrato por la concurrencia de los factores mencionados, las partes quedan obligadas, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Así, el incumplimiento contractual es definido como "el quebrantamiento de un deber que surge de un contrato expreso o implícito". *Soc. de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998). De esta acción producir daños a una de las partes contratantes, surge una causa de acción. *Íd.*

Sabido es que, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y estos deben ser cumplidos a tenor con las mismas. Art. 1044 del Código Civil, 31 LPRA sec. 2994. En consideración a dicho postulado, se dice que "cuando las personas contratan crean normas obligatorias; tan obligatorias como la ley misma", por lo que "los contratos ... tienen fuerza de obligar; tienen que ser cumplidos". *VDE Corporation v. F & R Contractors*, 180 DPR 21, 34 (2010), citando a J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Universidad Interamericana de Puerto Rico, 2006, T. IV, Vol. II, págs. 99-100.

A tenor con lo anterior, el Art. 1233 del Código Civil, 31 LPRA sec. 3471 estipula que, si los términos de un contrato son claros y

no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. En cambio, si las palabras parecieran contrarias a la intención evidente de las partes, esta última prevalecerá sobre las palabras. *Íd.* De modo que la intención de los contratantes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. *Marcial v. Tomé*, 144 DPR 522, 537 (1997). Por ello, el norte de la interpretación contractual es determinar cuál fue la intención real y común de las partes. *Municipio Mayagüez v. Lebrón*, 167 DPR 713, 723 (2006).

Para auscultar dicha intención, los tribunales han aplicado una metodología pragmática que consiste en estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato, incluyendo otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes y el acuerdo que intentaron llevar a cabo. *VDE Corporation v. F & R Contractors*, supra, pág. 35.

## C.

Es sabido que tanto las determinaciones de hechos, como la apreciación de la prueba, la adjudicación de credibilidad y el valor probatorio que le da el Tribunal de Primera Instancia a la evidencia presentada son merecedoras de gran deferencia. Su razón de ser estriba en que es el foro sentenciador el que ha tenido el beneficio de escuchar y observar el *demeanor* de los testigos. No obstante, dicho principio no es uno absoluto, toda vez que se ha establecido que, cuando los foros apelativos percibimos la existencia de pasión, prejuicio, parcialidad o error manifiesto no estamos compelidos a guardar esta norma de abstención, por lo que bajo estas instancias poseemos autoridad para intervenir. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020). En otras palabras, solo podremos inmiscuirnos en las determinaciones de hecho cuando la

apreciación de la prueba no represente el balance racional, justiciero y jurídico de la totalidad de la prueba. *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 933 (2015); *Dávila Nieves v. Meléndez Marín, supra,* pág. 770-771; *González Hernández v. González Hernández,* 181 DPR 746, 776-777 (2011); *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 986-987 (2010).

**III.**

Por su estrecha relación, discutiremos conjuntamente los primeros dos señalamientos de error planteados por la parte apelante.

En su primer señalamiento de error, la parte apelante sostiene que el foro *a quo* erró y abusó de su discreción en la apreciación de la prueba al determinar que, la carta suscrita a manuscrito el 18 de febrero de 2018 constituía un contrato de compraventa entre las partes. Aduce que dicho documento no cumplía con los requisitos esenciales de un contrato de compraventa, ni con aquellos exigidos por nuestro ordenamiento jurídico para la figura de la donación. En consecuencia, argumenta que, ante el testimonio antagónico de las partes, resultaba inverosímil concluir que se había configurado un contrato de compraventa conforme a derecho.

En su segundo señalamiento de error, la parte apelante plantea que incidió el foro primario al dictar sentencia en ausencia de una parte indispensable, al ordenarle otorgar la escritura pública de compraventa del inmueble objeto del pleito sin la comparecencia del Banco Popular de Puerto Rico, acreedor hipotecario y titular de derechos legítimos sobre la propiedad. Argumenta que, el contrato de hipoteca que grava la propiedad contiene una cláusula de aceleración en caso de venta del inmueble. Añade que, para que un tercero pueda asumir la deuda y las obligaciones contraídas por un deudor original en los mismos términos, no basta con un acuerdo entre las partes, sino que es indispensable el consentimiento del

acreedor hipotecario, quien no formó parte del pleito. Así, concluye que el dictamen emitido por el foro de instancia carece de eficacia jurídica.

Por su parte, la parte apelada sostiene que la ausencia de la transcripción de la prueba oral constituye un impedimento procesal insalvable para revisar los errores señalados por la parte apelante, pues estos descansan en la apreciación de la credibilidad de los testigos realizada por el foro primario. En ese sentido, destaca que la sentencia apelada fue emitida luego de la celebración de un juicio en su fondo, durante el cual el tribunal tuvo la oportunidad de aquilatar la credibilidad de los testigos y realizar determinaciones específicas en torno a la intención de las partes, la existencia del acuerdo de compraventa, el entendimiento sobre dicho acuerdo y la conducta ulterior de las partes. En consecuencia, sostiene que la parte apelante no logró derrotar la presunción de corrección y legalidad que ampara a las determinaciones judiciales en ausencia de pasión, prejuicio, parcialidad o error manifiesto.

Asimismo, la parte apelada niega que el Banco Popular de Puerto Rico constituya una parte indispensable en el presente pleito, pues la sentencia cuestionada no adjudica, modifica ni extingue derecho alguno perteneciente al acreedor hipotecario. Señala, además, que esta no releva a la parte apelante de sus obligaciones hipotecarias, no cancela la hipoteca inscrita, no obliga al banco a aceptar un nuevo deudor ni adjudica controversia alguna relacionada con el préstamo hipotecario. Por el contrario, sostiene que el dictamen únicamente ordena el cumplimiento específico del acuerdo de compraventa mediante el otorgamiento de la correspondiente escritura pública. De manera que, cualquier derecho derivado de la cláusula "*due on sale*", así como cualquier remedio contractual del acreedor hipotecario, permanece intacto y

podrá ser ejercido exclusivamente por este, si así lo estima procedente.

Adelantamos que, luego de un análisis detenido del expediente ante nuestra consideración, así como de la normativa aplicable, colegimos que no se cometieron los errores señalados por la parte apelante. *Veamos.*

En cuanto al primer señalamiento de error, la controversia planteada requiere revisar la apreciación de la prueba realizada por el foro primario y, particularmente, las determinaciones de credibilidad que lo condujeron a concluir que entre las partes se perfeccionó un contrato de compraventa respecto a la propiedad en controversia. Sin embargo, la parte apelante no incluyó en el expediente la transcripción de la prueba oral desfilada durante el juicio en su fondo, lo que imposibilita a este foro intermedio examinar adecuadamente los fundamentos fácticos en los que descansó el dictamen apelado.

Como es bien sabido, los tribunales apelativos, como norma general, no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el tribunal de instancia, salvo en situaciones en que éste haya incurrido en pasión, prejuicio, parcialidad o error manifiesto. *Dávila Nieves v. Meléndez Marín, supra,* pág. 753; *Gómez Márquez et al. v. El Oriental, supra,* pág. 793s. De manera que, en ausencia de una transcripción de la prueba oral, este tribunal estará impedido de sustituir el criterio del foro primario por el suyo propio, pues carecerá de los elementos necesarios para determinar si medió pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba.

En el presente caso, el foro de instancia concluyó que las partes alcanzaron un acuerdo de compraventa, tras evaluar la prueba documental y testifical presentada durante el juicio.

Precisamente, determinar la intención de las partes al suscribir el documento de 18 de febrero de 2018 dependía, en gran medida, de la valoración de la credibilidad de los testigos y de la totalidad de la prueba presentada. Ante la ausencia de la transcripción correspondiente, la parte apelante no logró derrotar la presunción de corrección que cobija las determinaciones de hechos efectuadas por el tribunal de instancia. En consecuencia, no nos corresponde intervenir con la conclusión del foro primario de que entre las partes existía un contrato válido de compraventa susceptible de cumplimiento específico. No se cometió el primer error señalado.

Ahora bien, en su segundo señalamiento de error, la parte apelante sostiene que el Banco Popular de Puerto Rico constituía una parte indispensable debido a que la propiedad objeto del pleito está gravada con una hipoteca a su favor. No obstante, un examen del remedio concedido por el foro primario demuestra que la sentencia apelada no adjudica, modifica ni extingue derecho alguno perteneciente al acreedor hipotecario. De igual forma, no altera las obligaciones asumidas por la parte apelante frente al banco, no ordena la sustitución del deudor hipotecario, no dispone la cancelación o modificación del gravamen inscrito ni impone obligación alguna al acreedor hipotecario.

El único remedio concedido por el foro primario consistió en ordenar el cumplimiento específico del contrato de compraventa mediante el otorgamiento de la correspondiente escritura pública entre las partes contratantes. Dicho remedio únicamente incide sobre los derechos y obligaciones recíprocos asumidos por los señores Acevedo Colón y Rivera Colón en virtud del contrato cuya existencia quedó acreditado en el juicio. Por consiguiente, cualquier derecho que el Banco Popular de Puerto Rico posea en virtud del contrato de hipoteca o de las cláusulas contenidas en este permanece inalterada y podrá ser ejercido por dicha institución

bancaria conforme a derecho, independientemente del resultado del presente pleito.

En ese contexto, resulta evidente que la sentencia apelada no afecta los intereses jurídicos del acreedor hipotecario ni impide el ejercicio de los derechos que le asisten bajo el contrato de hipoteca. Por ello, su comparecencia no era indispensable para la adjudicación de la controversia planteada entre las partes contratantes. En suma, no se cometió el segundo error.

Finalmente, en su último señalamiento de error, la parte apelante cuestiona la imposición de honorarios de abogado por temeridad. Específicamente, sostiene que abusó de su discreción el foro primario pues, a su juicio, existía una controversia genuina sobre al acuerdo al que llegaron las partes y si el mismo constituía un contrato de compraventa debidamente perfeccionado. Así, reitera que de la prueba desfilada ante el tribunal surge claramente la diferencia entre las partes sobre la interpretación del contrato, por lo que no se sostiene la determinación del foro *a quo*.

Examinado con detenimiento el tracto procesal del caso y los argumentos de las partes, razonamos que estos se sostienen. Como es bien sabido, nuestro derecho procesal civil le concede al TPI la facultad para imponer el pago de honorarios de abogado a la parte litigante que obró de forma temeraria o frívola. Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R.44.1(d); *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 145 (2022). Es decir, cuando existe temeridad, la imposición de honorarios a dicha parte es obligatoria. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 334 (1998). La cuantía de honorarios de abogado concedida no varía en la apelación a menos que esta sea excesiva, exigua o haya constituido un abuso de la discreción del tribunal apelado. *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Ramírez Anglada v. Club Cala de Palmas*, 123 DPR 339, 350 (1989).

Al ser discrecional la facultad de imponer honorarios por temeridad, este tribunal reitera su posición de no intervenir con la apreciación que realizó el foro primario. En este caso, la conducta de la parte apelante movió al tribunal a tal determinación. Esta sanción es producto del examen de la prueba y del proceder de la parte apelante en la tramitación del caso, específicamente por su actuación al optar por presentar una demanda de desahucio incompatible con el acuerdo contractual, obligando así al señor Rivera Colón a comparecer y defenderse judicialmente, incurriendo en gastos legales, para hacer valer sus derechos cuando estos debieron ser reconocidos sin la necesidad de llegar a un litigio. Ante la ausencia de una determinación irrazonable y, toda vez que la cuantía de $1,000.00 impuesta no nos parece excesiva, no intervendremos con la decisión del TPI.

En ausencia de pasión, prejuicio o parcialidad, coincidimos con lo pronunciado por el Tribunal de Primera Instancia en su determinación, procede confirmar la *Sentencia* apelada.

### IV.

Por los fundamentos antes expuestos, confirmamos la *Sentencia* emitida el 18 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones